UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BMW OF NORTH AMERICA LLC, et al.,

Plaintiffs,

v.

K VIP AUTO BODY, et al.,

Defendants.

Case No. 17-cv-00543-SK

**REFERRAL FOR REASSIGNMENT AND REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**

Regarding Docket Nos. 36, 37

Now before the Court is the motion for default judgment filed by Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG (collectively referred to as "Plaintiffs"). Defendants K VIP Auto Body, Guo Yong Chen, Jing Jing Deng a/k/a Tina Deng, Shao Chun Chen, and Fen Deng a/k/a Andy Deng (collectively referred to as "Defendants") have not appeared in this action. The Clerk entered default against Guo Yong Chen, Jingjing Deng a/k/a Tina Deng, Shao Chun Chen, and Fen Deng a/k/a Andy Deng (collectively referred to as "Individual Defendants") on May 2, 2017 and against K VIP Auto Body on May 9, 2017.

After Plaintiff filed this action, Defendant K VIP Auto Body dissolved as a California corporation. (Dkt. 44-27 (Declaration of Nicole Drey Huerter ("Huerter Decl."), ¶ 16, Ex. QQ.) As a result, Plaintiffs request that the Court dismiss K VIP Auto Body without prejudice. However, Federal Rule of Civil Procedure 41(a)(1)(A)(i) authorizes a plaintiff to dismiss an action against a party without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" The Court construes Plaintiff's request in the motion as a notice of dismissal. Because Defendants have not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), the undersigned Magistrate Judge does not have authority to make a dispositive ruling in this case. Accordingly, the Court ORDERS that this case be REASSIGNED to a district judge.

The Court RECOMMENDS that, pursuant to Plaintiffs' notice of dismissal, K VIP Auto Body be DISMISSED from this action.  Plaintiffs now move for default judgment against the Individual Defendants and seek a permanent injunction and statutory damages.  For the reasons stated below, the Court RECOMMENDS that Plaintiffs' motion  be GRANTED.

**BACKGROUND**

Plaintiffs are in the business of designing, manufacturing, and/or distributing motor vehicles, parts, and accessories, including but not limited to air caps, valve stem caps, badges, emblems, and key chains, which feature the BMW® trademarks.  (Dkt. 1 (Complaint), ¶ 20.) Plaintiffs allege that their motor vehicles and related products have earned a reputation for innovation, quality and performance, and that they have spent substantial time, money and effort on developing consumer recognition and awareness of their BMW and M marks and products. (*Id*. ¶ 21.)  Plaintiffs have developed significant goodwill in their entire product line through the use of their marks.  (*Id*. ¶ 23.)  Plaintiffs own numerous registered trademarks for their BMW and M branded products and contend that Defendants infringed many of their marks.  (*Id*. ¶ 24; *see also* Dkt. 44-27 (Declaration of Nicole Drey Huerter), ¶ 17, Ex. RR.)

Plaintiffs allege that Defendants use the Internet auction website located at eBay.com to advertise, sell and distribute counterfeit products featuring Plaintiffs' marks to consumers.  The Individual Defendants have used a number of account IDs and aliases on eBay, including, but not limited to, "tina_0918," "us85_whoesale," "us85com," "tina900918," "us85_seller," "us85cp," and "us85_everything."  (*Id*. ¶ 29.)  Plaintiffs also allege that the Individual Defendants have used the website located at www.us85.com to advertise, sell and distribute counterfeit products featuring Plaintiffs' marks.  (*Id*. ¶ 30.)  The Individual Defendants have used the payment processing service located at PayPal.com, which is provided by PayPal, Incorporated, to complete the sales of these counterfeit products, using the PayPal accounts and email addresses bmw@live.hk and info@us85.com.  (*Id*. ¶ 31.)

As part of an investigation into the Defendants' counterfeiting activities, Plaintiffs purchased several BMW branded products from them.  (*Id*. ¶¶ 34-41; Dkt. 44-1 (Declaration of Christopher D. Johnson) ¶¶ 2-14.)  On November 2, 2015, Plaintiffs' investigator purchased the

2

item "Black CAR Wheel Tyre Tire Valve Dust Stems Air Caps + Keychain With BMW M Emblem" from eBay seller "tina_0918" for $7.60.  The investigator paid "K VIP Auto Body" with an email address of bmw@live.hk through PayPal.  (Dkt. 44-1, ¶ 3, Exs. A, B.)  On November 12, 2015, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "tina_0918" with a return address of Jing Jing Deng, 174 Niagara Avenue, San Francisco, California 94112.  (*Id*., ¶ 4, Ex. C.)  The package contained a set of four air caps and a keychain each featuring the M® trademark.  (*Id*., ¶ 4, Ex. D.)  Plaintiffs inspected the air caps and key chain and determined that they were counterfeit.  (Dkt. 44-26 (Declaration of Charlotte Jablanczy), ¶ 2.)

On November 3, 2015, Plaintiffs' investigator purchased the item "Black Car Wheel Tyre Tire Air Valve Caps Stem Cover For BMW With Emblem M" from eBay seller "us85_whoesale" for $6.51.  The investigator paid "K VIP Auto Body" with an email address of bmw@live.hk through PayPal.  (Dkt. 44-1, ¶ 5, Exs. E, F.)  On November 20, 2015, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "us85_whoesale" with a return address of "Shao Chun Chen, 123 Thrift Street, San Francisco, 94112.  (*Id*., ¶ 6, Ex. G.)  The package contained a set of four valve caps featuring the BMW® word and logo trademarks.  (*Id*., ¶ 6, Ex. H.)  Plaintiffs inspected the valve caps and determined that they were counterfeit.  (Dkt. 44-26, ¶ 3.)

On December 18, 2015, Plaintiffs' investigator purchased the item "Black Car Wheel Tyre Tire Air Valves Dust Caps Stems Cover With BMW M Emblem" from eBay seller "us85com" for $6.51.  The investigator paid "K VIP Auto Body" with an email address of bmw@live.hk through PayPal.  (Dkt. 44-1, ¶ 7, Exs. I, J.)  On December 23, 2015, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "us85com" with a return address of Tina Deng, 174 Niagara Avenue, San Francisco, California 94112.  (*Id*., ¶ 8, Ex. K.)  The package contained a set of valve caps featuring the M® trademark.  (*Id.*, ¶ 8, Ex. L.)  Plaintiffs inspected the valve caps and determined that they were counterfeit.  (Dkt. 44-26, ¶ 4.)

On March 11, 2016, Plaintiffs' investigator purchased the item "Silver CAR Wheel Tyre Tire Valve Dust Stems Air Caps Keychain With BMW M Emblem" from eBay seller

United States District Court
Northern District of California

United States District Court
Northern District of California

"tina900918" for $8.71.  The investigator paid "K VIP Auto Body" with an email address of bmw@live.hk through PayPal.  (Dkt. 44-1, ¶ 9, Exs. M, N.)  On March 18, 2016, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "tina900918" with a return address of Jing Jing Chen, 233 South Maple Avenue, Suite 11, South San Francisco, California 94080.  (*Id*., ¶ 10, Ex. O.)  The package contained a set of four air caps and one keychain each featuring the M® trademark.  (*Id*., ¶ 10, Ex. P.)  Plaintiffs inspected the air caps and keychain and determined that they were counterfeit.  (Dkt. 44-26, ¶ 5.)

On April 1, 2016, Plaintiff sent a "cease and desist" letter by certified mail to the registered agent for service of process for K VIP Auto Body.  (Dkt. 44-27 (Declaration of Nicole Drey Huerter), ¶ 2, Ex. Y.)  On April 7, 2016, Plaintiffs telephoned Guo Yong Chen and Jing Jing Deng a/k/a Tina Deng to follow up on the "cease and desist" letter, but both of whom hung up on Plaintiffs.  (*Id.*, ¶ 2.)  On April 8, 2016, Plaintiffs sent "cease and desist" letters by certified mail to each of the Defendants identified on the return addresses on the packages.  (*Id.*, ¶ 2, Ex. Z.)  Plaintiff received return receipts for at least two of these letters.  (*Id*.)  On April 25, 2016, and May 9, 2016, Plaintiffs then sent follow-up correspondences by email, but did not receive any responses.  (*Id*., ¶ 2, Ex. AA.)

On April 26, 2016, Plaintiffs issued notices to eBay of Defendants' infringement of Plaintiffs' trademarks through Defendants' eBay IDs "tina_0918," "tina900918," "us85_whoesale," and "us85com."  (Dkt. 44-27, ¶ 3, Ex. BB.)  Plaintiffs identified specific listings of infringing products by Defendants.  (*Id*., Ex. BB.)  eBay removed all of the listings identified by Plaintiffs, but then Defendants posted additional listings through their eBay IDs "tina_0918" and "tina900918."  (*Id*., ¶ 3.)  On May 12, 2016, Plaintiffs then issued another notice to eBay of Defendants' continued infringement of Plaintiffs' trademarks through the Individual Defendants' eBay IDs "tina_0918" and "tina900918."  (*Id*., ¶ 3, Ex. CC.)  eBay removed these listings as well. (*Id*., ¶ 3.)  Again, the Individual Defendants posted another infringing listing on eBay.  On June 20, 2016, Plaintiffs issued another notice to eBay of the Individual Defendants' continued infringement of Plaintiffs' trademarks through Defendants' eBay ID "tina900918," and eBay removed the listing.  (*Id*., ¶ 3, Ex. DD.)

On June 3, 2016, Plaintiffs' investigator purchased the item "1PC Silver ///M Motorsport Metal Car Fender Skirts Side Sticker Badge Emblem" from eBay seller "us85_seller" for $14.16. The investigator paid "US85.COM" with an email address of bmw@live.hk through PayPal. (Dkt. 44-1, ¶ 11, Exs. Q, R.)  On June 7, 2016, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "us85_seller" with a return address of Andy Deng, 418 Athens Street, San Francisco, California 94112.  (*Id*., ¶ 12, Ex. S.)  The package contained one badge/emblem featuring the BMW® and M® trademarks.  (*Id*., ¶ 12, Ex. T.) Plaintiffs inspected the emblem and determined that it was counterfeit.  (Dkt. 44-26, ¶ 6.)

On February 2, 2017, Plaintiff filed this action asserting claims for trademark infringement, unfair competition, trademark dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and California Business and Professions Code § 17200 for unlawful, unfair and fraudulent business practices.  (Dkt. 1.)  Plaintiffs served Defendants Guo Yong Chen and Jing Jing Deng a/k/a Tina Deng at a home they purchased in September 2016 and at which they were residing. (Dkt. 44-27, ¶ 4, Ex. EE; Dkts. 12, 13.)  Based on their investigation, Plaintiffs determined that Fen Deng a/k/a Andy Deng was residing at the same address, and, thus, Plaintiffs served him there as well.  (*Id*.; Dkt. 14.)  Plaintiffs determined that Defendant Shao Chun Chen had purchased a home in May 2016, and served her at that address.  (Dkt. 44-27, ¶, Ex. FF; Dkt. 16.)

After Plaintiffs served Defendants, on February 26, 2017, Plaintiffs' investigator purchased the item "Car Wheel Tire Tyre Air Valve Caps Stem Dust Cover Black White BMW Logo Emblem" from eBay seller "us85_seller" for $7.62.  The investigator paid "Maggie Hu" with an email address of mhu1989130@yahoo.com through PayPal.  (Dkt. 44-1, ¶ 13, Exs. U, T.)  On March 3, 2017, Plaintiffs' investigator received a package in Woodland Hills, California pursuant to this transaction from "us85_seller" with a return address of Andy Deng, 418 Athens Street, San Francisco, California 94112.  (*Id*., ¶ 14, Ex. W.)  The package contained four valve caps featuring the BMW® word and BMW® logo trademarks.  (*Id*., ¶ 14, Ex. X.)  Plaintiffs inspected the valve caps and determined that it was counterfeit.  (Dkt. 44-26, ¶ 7.)

Through PayPal's records, Plaintiff have identified at least 4,089 unauthorized sales by Defendants of BMW®-related products, grossing $43,270.97.  (Dkt. 44-27, ¶ 9, Exs. KK, LL, &

MM.)  At various times, each of the Individual Defendants had their names and addresses listed on the PayPal accounts.  (Dkt. 44-27, Ex. KK.)  The eBay seller IDs used by Defendants were registered to either Fen Deng a/k/a Andy Deng or Jing Jing Deng a/k/a Tina Deng and either used email addresses with the name Tina and Jing Jing Deng a/k/a Tina Deng's birthdate or bmw@live.hk.  (Dkt. 44-27, ¶ 9, Ex. OO.)  Guo Yong Chen's bank accounts and credit cards, and Jing Jing Deng a/k/a Tina Deng's credit cards were listed and used on the PayPal accounts.  (Dkt. 44-27, Ex. KK; *see also* Dkt. 53, ¶ 3, Ex. SS.)  Three of the packages Defendants sent to Plaintiffs' investigators had Jing Jing Deng a/k/a Tina Deng's name in the return address, two of the packages had Fen Deng a/k/a Andy Deng's name in the return address, and one of the packages had Shao Chun Chen's name in the return address.  (Dkt. 44-1, ¶¶ 3-14, Exs. C, G, K, O, S, W.)  One of the addresses Defendants used for their counterfeit activities is the home in which Shao Chun Chen lived.  (Dkt. 44-27, Ex. FF.)  Shao Chun Chen also was one of the owners of the address used for the now dissolved corporation K VIP Auto Body.  (Dkt. 44-27, Ex. EE.)

In addition to eBay, Defendants sold counterfeit BMW®-related products through the website www.us85.com.  (Dkt. 44-27, Ex. HH.)  Guo Yong Chen registered this website, using his personal address and bwm@live.hk as the email address.  (Dkt. 44-27, Exs. EE, GG.)  This website is powered by Shopify.  Plaintiffs sought information about sales made through the website, but Shopify informed Plaintiff that the parent company, a Canadian entity, had the information.  (Dkt. 44-27, ¶ 8.)  The parent company would not respond to a subpoena issued in the United States.  (*Id.*)

After Defendants were served with the Complaint in this action, they switched to using codes to refer to BMW® products.  (Dkt. 44-27, ¶ 9, Ex. NN.)  They also used the name "Maggie Hu" and the email address mhu1989130@yahoo.com with the eBay seller ID "us85_seller" after they were served with the complaint.  Fen Deng a/k/a Andy Deng, Jing Jing Deng a/k/a Tina Deng, and Guo Yong Chen's names and addresses were all used with this account.  (Dkt. 44-27, ¶ 9, Ex. KK.)  Fen Deng a/k/a Andy Deng sent the item purchased from "Maggie Hu" from his address.  (Dkt. 44-1, ¶ 14, Ex. W.)

In their Complaint, Plaintiffs seek $200,000 in statutory damages and a permanent

injunction.

## ANALYSIS

### A. Jurisdiction and Service.

Before entering default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *See In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Plaintiffs bring claims for trademark infringement, false designation of origin, and dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Therefore, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. §§ 1367(a).

The Court also has personal jurisdiction over Defendants. When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). California's long arm statute, California Civil Code § 410.10, which determines personal jurisdiction, is coextensive with federal due process requirements, and therefore the analysis for personal jurisdiction is the same under both state and federal law. *Id.* at 800–01. "Due process requires that a defendant have minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Here, although not necessary, the Court finds that Plaintiffs have demonstrated both general and specific jurisdiction over Defendants.

#### 1. General Jurisdiction.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiffs allege that each of the Individual Defendants reside in California. Plaintiffs also allege, and submit evidence demonstrating, that the Individual Defendants are conducting their counterfeiting business in California. Therefore, it appears that the Individual Defendants not only

7

live in California, but have no intent to leave and, thus, are domiciled here.  Accordingly, the Court finds that Plaintiffs have demonstrated general jurisdiction over the Individual Defendants.

### 2.      Specific Jurisdiction

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed its activities at the forum state or has purposefully availed itself of the privileges of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985).  "The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted).

Here, Plaintiffs allege, and submit evidence to demonstrate, that the Individual Defendants committed the alleged trademark infringement and unfair competition in California.  Plaintiffs' investigator viewed the listings for, and purchased, the counterfeit products from an address in California.  Defendants mailed the counterfeit products to Plaintiffs' investigator in California, and the return addresses on the packages indicate that Defendants mailed all of the packages from California.  (Dkt. 1 at ¶¶ 34-41; Dkt. 44-1 at ¶¶ 2-14.)  Therefore, Plaintiffs have shown that Defendants purposefully directed its activities at residents of the forum by advertising and selling counterfeit products to Plaintiffs.  Moreover, Plaintiffs' claims arise out of those activities.  Additionally, the Court finds that the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802.  Accordingly, the Court may exercise specific jurisdiction over the Individual Defendants. *Id*.

Moreover, service here was adequate.  A plaintiff must serve each defendant with a summons and a copy of the complaint.  Fed. R. Civ. P. 4(c)(1).  Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure permits service by leaving a copy of the Summons and Complaint at the defendant's place of residence with another person of suitable who lives at that residence.  Plaintiffs complied with this method of service.  (Dkts. 12, 13, 14, and 16.)  Plaintiffs served defendants Guo Yong Chen, Jing Jing Deng a/k/a Tina Deng, and Fen Deng a/k/a Andy Deng at

United States District Court
Northern District of California

930 Capitol Avenue, San Francisco, 94112 and served defendant Shao Chun Chen at 2910 Norbridge Avenue in Castro Valley, California, 94546.  (Dkts. 12, 13, 14, and 16.)  Plaintiffs left copies of the summons and complaint with another adult co-occupant at the residences and then mailed copies to the addresses.  (*Id*.)  Plaintiffs served the Individual Defendants at their current residences, which differed from the addresses on the issued summons.  (Dkt. 44-27, ¶ 4, Exs. EE, FF.)

**B.      Standards Governing Default Judgment.**

After entry of default, a court may grant default judgment on the merits of the case.  *See* Fed. R. Civ. P. 55.  Upon default, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977).  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980).  In determining whether to enter default judgment, a court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Here, these factors weigh in favor of granting Plaintiffs' motion for default judgment.

**C.      Plaintiffs' Motion.**

**1.      Prejudice to Plaintiffs.**

If the Court denied Plaintiffs' motion, they would likely be left without a remedy given Defendants' failure to appear or otherwise defend this action.  *See Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

**2.      Merits of Plaintiffs' Claims and Sufficiency of the Complaint.**

The second and third factors, which look to the merits of Plaintiffs' substantive claims and the sufficiency of the Complaint, also support entry of default judgment.  After an entry of default,

United States District Court
Northern District of California

well-pled allegations in the complaint are deemed true, except for the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiffs claim that the Individual Defendants infringed several of their trademarks. To prevail on a claim of trademark infringement, Plaintiffs must prove that: (1) they own the rights to a valid trademark and (2) that Defendants' use of the mark in interstate commerce is likely to cause consumer confusion. *KP Permanent Make-Up Inc., v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). Plaintiffs have sufficiently alleged, and supported with evidence, both. They allege that they own a number of BMW and M marks, and that their marks are registered with the USPTO. (Dkt. 1 (Compl.) ¶ 24; Dkt. 44-27, ¶ 17.) Plaintiffs also properly allege likelihood of confusion under the test established in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). They also allege that items at issue here are counterfeits that are closely similar to the marks Plaintiffs are attempting to protect. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d. 936, 945 (9th Cir. 2011) ("[T]here is a likelihood of confusion . . . when the offending mark is a counterfeit mark, or a mark virtually identical to the previously registered mark coupled with the intent to pass off or borrow from established good will."). Despite Plaintiffs' attempts to contact Defendants to prevent further infringement, the Individual Defendants have continued market and sell counterfeit items bearing Plaintiffs' trademarked logos. Moreover, Plaintiffs sufficiently allege, and supplement with substantial evidence of, each Individual Defendant's direct involvement in the infringing acts.[1]

### 3.  Sum of Money at Stake.

The fourth *Eitel* factor focuses on the amount at issue in the action. "[C]ourts should be hesitant to enter default judgments in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Board of Trs. v. Core Concrete Const., Inc.*, 2012 WL 380304, at \*4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at

[1] Plaintiffs are only seeking statutory damages under the Lanham Act, and Plaintiffs' claim for trademark infringement under the Lanham Act supports an award of such damages. Therefore, the Court need not address whether Plaintiffs have alleged sufficient facts to demonstrate that their other claims are meritorious as well.

United States District Court
Northern District of California

1472).  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.* (citations omitted); *see also Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (holding this factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct.").

Here, Plaintiffs seek $200,000 in statutory damages.  Although this amount is large, the Court notes that Plaintiffs discovered that Defendants grossed over $43,000 from sales of counterfeit BMW® products.  This amount does not include sales made from Defendants' website at www.us85.com, which Defendants also used to sell their counterfeit products.  Moreover, the Lanham Act provides for a maximum of $2,000,000 per counterfeit mark per type of goods or services sold when the use of the counterfeit mark was willful.  *See* 15 U.S.C. § 1117(c)(2); *see also Yelp Inc.*, 70 F. Supp. 3d at 1100 (finding plaintiff's request for $2,000,000 reasonable under *Eitel* in light of the maximum statutory damages for willful counterfeiting).  Here, there is substantial evidence demonstrating that Defendants' counterfeiting activities were willful.

### 4.    Remaining *Eitel* Factors.

Because Defendants have not answered the Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.  Next, there is no evidence or indication that Defendants' failure to appear was due to excusable neglect.  Plaintiffs properly served Defendants.  Defendants' conduct in seemingly trying to shield their identity and their counterfeiting activities after Plaintiffs served them indicates that they were fully aware of this litigation.  Finally, although the seventh *Eitel* factor – balancing the policy consideration that whenever reasonably possible cases should be decided on their merits – weighs against default judgment, the majority of other factors weigh heavily in favor of default judgment.

Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case.  Fed. R. Civ. P. 55(b); *see also Bd. of Trustees v. RBS Washington, LLC,* 2010 WL 145097 at *4 (N.D. Cal. Jan. 8, 2010.)  Here, Defendants failed to litigate.

Therefore, the Court recommends that default judgment be entered against the Individual

Defendants.

**D.    Remedy.**

      **1.    Statutory Damages.**

While the allegations in the Complaint are taken as true for purposes of default judgment, courts must make specific findings of fact in assessing the amount of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court has discretion to determine the amount of damages to be awarded. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).

Here, Plaintiffs seek statutory damages pursuant to the Lanham Act in the amount of $200,000 in damages, as well as injunctive relief. Under the Lanham Act, a plaintiff may elect to recover an award of statutory damages for actions involving the use of a counterfeit mark at any time before final judgment is entered. 15 U.S.C. § 1117(c). Section 1117(c) provides for statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just or, if the use was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. *Id*.

The Court finds that Plaintiffs' requested damages are within a reasonable range of what is proscribed by statute. *See* 15 U.S.C. 1117(a),(c). Moreover, the amount of $200,000 is reasonable in relation to the allegations and harm stated in the Complaint, as well as the alleged willful nature of the infringement. As noted above, Plaintiffs have shown that Defendants sold over $43,000 in counterfeit BMW® products, and this does not include the amounts from Defendants' sales of counterfeit BMW® products from the website www.us85.com.

Additionally, Plaintiffs have shown that the infringement was willful. Allegations of willful trademark infringement are deemed true on default. *Yelp, Inc. v. Catron,* 70 F.Supp.3d 1082, 1101 (N.D. Cal. 2014) (citing *Derek Andrew, Inc. v. Poof Apparel Corp., *528 F.3d 696, 702 (9th Cir. 2008). Here, Plaintiffs not only alleged willful trademark infringement in their complaint but also presented substantial evidence that Defendants continued to sell counterfeit BMW® products after Defendants had notice of Plaintiffs' infringement contentions and of this lawsuit.

Defendants continued to sell products with BMW® and M® trademarks, after Plaintiffs served them with "cease and desist" letters, after eBay took down listings of their counterfeit BMW® and M® products, and after Plaintiffs served each Individual Defendant. (Dkt. 44-27, ¶¶ 2, 3, 9, 10, 15, Exs. Z, AA, BB, CC, DD, MM, ¶; Dkts. 12, 13, 14, 16.) After Plaintiffs served Defendants with this lawsuit, Defendants then attempted to hide their counterfeit sales and their identity. (Dkt. 44-27, ¶¶ 9, 15, Ex. NN.)

As other courts have observed, "the Court has discretion in determining the amount of any damages award, thus ensuring that the award corresponds to Plaintiffs' actual injuries based on Defendants' infringement." *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 999 (N.D. Cal. 2010). Additionally, courts should, however, award damages in trademark infringement cases that are sufficient to deter future infringement. *See Playboy Enters., Inc., v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982).

The Court finds that, in light of Defendants' voluminous sales of counterfeit goods and efforts to shield their activities after receiving notice of this lawsuit, $200,000 in statutory damages is reasonable. Therefore, the Court recommends that Plaintiffs be awarded $200,000 in statutory damages.

### 2. Injunctive Relief.

Under 17 U.S.C. § 1116(a), a court may enter an injunction against a defendant to prevent future infringement. Here, Defendant has repeatedly infringed upon Plaintiffs' BMW® and M® trademarks. Plaintiff will suffer irreparable injury if the ongoing infringement is not enjoined. Furthermore, Defendants' refusal to participate in this action makes it difficult for Plaintiffs to prevent further infringement. The Court is unaware of any reason why an injunction would impose undue hardship on Defendants or harm the public interest. Accordingly, injunctive relief is warranted. Therefore, the Court further recommends that Plaintiffs' request for a permanent injunction be granted as described below.

### CONCLUSION

The Court RECOMMENDS that Defendant K VIP Auto Body be DISMISSED from this action and that Plaintiffs' motion for default judgment against the Individual Defendants be

13

GRANTED.  Accordingly, the Court RECOMMENDS that Plaintiffs' be AWARDED $200,000 in statutory damages pursuant to 15 U.S.C. § 1117(c) and that, pursuant to 15 U.S.C. § 1116(a), the Individual Defendants, and their agents, representatives, and all persons acting in concert with them, be PERMANENTLY ENJOINED from:

a.    The import, export, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, shipment, licensing, development, display, delivery, marketing, advertising or promotion of any counterfeit products bearing the BMW®, M2®, M3®, M5®, M6®, MINI®, MINI COOPER®, the BMW® blue/white/black circle colored mark, the BMW® white circle mark, the BMW® black circle mark, the MINI® wing emblem, the ///M® colored striping mark, the ///M® non-colored striping mark, and the stylized S® mark, specifically including but not limited to any air caps, valve stem caps, badges, key chains, automobile parts or accessories, and any other unauthorized merchandise bearing any of Plaintiffs' Trademarks (including any non-genuine reproduction, counterfeit, copy or colorable imitation thereof);

b.    The import, export, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, shipment, licensing, development, display, delivery, marketing, advertising or promotion of any counterfeit products bearing the BMW®, M2®, M3®, M5®, M6®, MINI®, MINI COOPER®, the BMW® blue/white/black circle colored mark, the BMW® white circle mark, the BMW® black circle mark, the MINI® wing emblem, the ///M® colored striping mark, the ///M® non-colored striping mark, and the stylized S® mark, specifically including but not limited to any air caps, valve stem caps, badges, key chains, automobile parts or accessories, and any other product which infringes or dilutes any of Plaintiffs' Trademarks, trade name, and/or trade dress, including but not limited to any of Plaintiffs' Trademarks;

c.    The unauthorized use, in any manner whatsoever, of any of Plaintiffs' Trademarks, trade names and/or trade dress, including but not limited to BMW®, M2®, M3®, M5®, M6®, MINI®, MINI COOPER®, the BMW® blue/white/black circle colored mark, the BMW® white circle mark, the BMW® black circle mark, the MINI® wing emblem, the ///M®

United States District Court
Northern District of California

14

colored striping mark, the ///M® non-colored striping mark, and the stylized S® mark, any variants, colorable imitations, translations and/or simulations thereof, and/or any items that are confusingly similar thereto, including specifically:

i.      on or in conjunction with any product or service; and

ii.     on or in conjunction with any advertising, promotional materials, labels, hangtags, packaging, or containers;

d.      The use of any trademark, trade name, or trade dress that falsely represents, or is likely to confuse, mislead or deceive purchasers, customers, or members of the public to believe that unauthorized product imported, exported, manufactured, reproduced, distributed, assembled, acquired, purchased, offered, sold, transferred, brokered, consigned, distributed, stored, shipped, marketed, advertised and/or promoted by Defendants originate from Plaintiffs, or that said merchandise has been sponsored, approved, licensed by, or associated with Plaintiffs or is, in some way, connected or affiliated with Plaintiffs;

e.      Engaging in any conduct that falsely represents that, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public to believe that Defendants are connected with, or are in some way sponsored by or affiliated with Plaintiffs, purchases product from or otherwise has a business relationship with Plaintiffs; and/or

f.      Affixing, applying, annexing, or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods, a false description or representation, including words or symbols, tending to falsely describe or represent such goods as being those of Plaintiffs;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served a copy. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D. Cal. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local Trust 595 Trust Funds, v. ACS Controls Corp.,* No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. April 20, 2011).

**IT IS SO ORDERED**.

Dated: May 9, 2018



SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

16